# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ROBIN R. BAKER,**

**Plaintiff,**

**-vs-**                                            **Case No.  6:07-CV-1138-ORL-28KRS**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL**
**SECURITY,**

**Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This matter came before the Court for consideration without oral argument on the
complaint filed by Robin R. Baker seeking review of the decision of the Commissioner of the
Social Security Administration ("Commissioner") denying her claim for Social Security benefits.
Doc. No. 1.  The Commissioner answered the complaint and filed a certified copy of the transcript
of the proceedings before the Social Security Administration ("SSA").  Doc. Nos. 5, 7.

## I.      PROCEDURAL BACKGROUND.

Baker applied for disability benefits under the Supplemental Security Income for Aged,
Blind, and Disabled program ("SSI"), 42 U.S.C. § 1381 *et seq*., and for disability benefits under
the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401 *et
seq*., alleging that she became disabled on January 1, 2000.  R. 117-19.  She subsequently amended
the onset date to April 8, 2003.  *See* R. 421.   The SSA denied Baker's applications both initially
and on reconsideration.  R. 38, 43, 72-73, 76-77.

An administrative law judge ("ALJ") held a hearing on Baker's application.  Based on the testimony and review of the medical records, the ALJ concluded that Baker had not engaged in substantial gainful activity since the onset date of her disability.  R. 54.  He found that Baker had Crohn's disease, diabetes mellitus, hypertension, pancreatitis and depression, which were severe impairments.  These impairments did not meet or equal impairments listed in the SSA regulations. R. 54.

The ALJ concluded that Baker had the residual functional capacity (RFC) to perform unskilled light work.  R. 52-54.  The ALJ did not use the special technique required for assessing the functional limitations arising from mental impairments.[1]  He found that Baker could not return to her past work as a hotel housekeeper, because that work exceeded her RFC.  R. 53.  Relying exclusively on the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ concluded that there was work available in the national economy that Baker could perform.  R. 53-54.

Baker asked the Appeals Council to review this decision. On May 20, 2005, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings.  It gave the ALJ specific instructions on matters to resolve on remand, including stating the weight given to the opinion of William W. Austin, Psy.D., to evaluate Baker's mental impairment using the

---

[1] "This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. . . . The ALJ is required to incorporate the results of this technique into the findings and conclusions." *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005) (internal quotation marks and citations omitted).

required special technique, R. 88-89, and to "[o]btain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." R. 89.

On October 17, 2005, the ALJ issued a second decision following the Appeals Council's remand. He again concluded that Baker had not engaged in substantial gainful activity since the onset date of her disability. R. 65. He again found that she had Crohn's disease, diabetes mellitus, hypertension, pancreatitis and depression, which were severe impairments that did not meet or equal any listed impairments. R. 65. He concluded that Baker could perform light exertional work, but that her mental impairment would limit her to remembering, performing and carrying out simple and repetitive tasks, with minimal interaction with others. R. 63. He determined that the ability to remember, perform and carry out simple repetitive tasks still permitted Baker to perform unskilled work. R. 64. He did not address the extent to which the nonexertional limitations requiring minimal interaction with others might erode the occupational base of work at the given exertional level. He again concluded that Baker could not return to her past relevant work. R. 64. Once again, the ALJ relied exclusively on the Grids to conclude that there was work available in the national economy that Baker could perform. R. 64. Accordingly, he found that Baker was not disabled. R. 65.

Baker again asked the Appeals Council to review this decision. Once again, the Appeals Council vacated the decision and remanded the case for further proceedings. The Appeals Counsel ordered a new ALJ to use the special technique to evaluate Baker's mental impairment, obtain evidence from a medical expert to clarify the nature and severity of Baker's impairment, and to

"[o]btain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base."  R. 109.

On October 10, 2006, the ALJ issued a decision finding Baker disabled as of July 1, 2006, but not earlier.  R. 25.  This ALJ concurred with previous findings that Baker had not engaged in substantial gainful employment since January 1, 2000.  R. 20.  He found that the medical evidence showed that Baker had Crohn's disease, diabetes mellitus, hypertension, pancreatitis and depression, which were severe impairments.  R. 20.  The impairments did not meet or equal any impairment listed in the SSA regulations.  *Id.*

The ALJ found that from January 1, 2000, the original disability onset date, to July 1, 2006, Baker had the residual functional capacity (RFC) to stand, walk and sit 6 hours in an 8-hour day, and to lift 20 pounds.  He found that she had no limitations with respect to remembering, performing and carrying out simple and repetitive tasks.  She also required minimal interaction with others.  R. 21.  Once again, the ALJ did not apply the special technique required for assessing mental impairments.  He concluded, without citation to any authority, that this RFC permitted Baker to perform the full range of light work.  R. 25.

The ALJ concluded that Baker's Crohn's disease had worsened in 2006, resulting in her hospitalization in July 2006, during which she received 3 pints of blood.  R. 24.  Due to this exacerbation, the ALJ found that Baker could not perform even sedentary work on a sustained basis as of July 1, 2006.  R. 24.  Based on his conclusions, the ALJ determined that Baker was disabled as of July 1, 2006, but not earlier.  R. 25.

On May 11, 2007, the Appeals Council considered Baker's request for review of the most recent ALJ's decision.  It found no reason to review the decision.  The Appeals Council did not discuss the ALJ's failure to call upon a VE as required by its previous remand orders.  R. 8-10.  Baker sought review of this decision by the United States District Court.  Doc. No. 1.

## II.      JURISDICTION.

As Baker has exhausted her administrative remedies, this Court has jurisdiction of this matter under 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

## III.     STATEMENT OF FACTS.

After a thorough review of the record, I find that the pertinent facts are adequately stated in the ALJ's decision and the parties' memoranda of law.  Accordingly, I will only summarize the relevant facts to protect Baker's privacy as much as possible.

Baker was 41 years old on the amended disability onset date.  R. 431.  She attended school through the tenth grade.  R. 431.  She previously worked in housekeeping and in dry cleaning.  R. 431.

At an ALJ's hearing in 2006, Baker testified that she did not believe she could hold down a job due to frequent Crohn's disease attacks accompanied by diarrhea, rectal bleeding, and dizziness.  R. 432.  She estimated that she had these attacks about 15 times a month.  R. 434.  She was so depressed by her condition that she wanted to end her life.  R. 435.

The medical records reflect that Baker began complaining of abdominal discomfort with diarrhea and vomiting as early as January 2001.  R. 279.  Baker sought emergency room treatment in December 2001, due to abdominal pain for the previous 3 days.  R. 162, 166.  In July 2002, she

was hospitalized due to complaints of abdominal pain with diarrhea and rectal bleeding.  R. 183-88.  She received "a couple units of blood" due to severe anemia and bleeding.  R. 181, 183.  The impression at discharge was that Baker had an inflammatory bowel disease, most likely Crohn's disease.  R. 181.

In September and October 2002, she again complained of diarrhea 3 to 4 times a day with rectal bleeding, pain and fatigue.  R. 195-96.  She was hospitalized in December 2002 for increasing abdominal pain and diarrhea.  R. 201.  The final diagnosis was acute exacerbation of Crohn's disease, confirmed with a colonoscopy, and diabetes mellitus.  R. 201, 205.  Tests also disclosed acute pancreatitis.  R. 200.

In January 2003, Charles Grant, M.D., examined Baker at the request of the SSA.  She reported that her diabetes was not well controlled.  She continued to complain of pain and diarrhea from Crohn's disease and pancreatitis despite medication and a strict diet.  R. 227.  Upon examination, Dr. Grant determined that Baker's range of motion was good, and straight-leg raising tests did not elicit pain.  R. 229.  Her grip strength and gait were also normal.  R. 230.

In March 2003, Baker was hospitalized again due to abdominal pain, discomfort, bloating, diarrhea, nausea, vomiting and a low-grade fever.  R. 255.  Raouf Hilal, M.D., evaluated her in April 2003.  At that time, Baker complained of abdominal pain with diarrhea, nausea, vomiting, hematochezia (bloody stool), and a 15 pound weight loss.  R. 293; *see also* R. 295.  Dr. Hilal adjusted her medication.  R. 294.

In May 2003, she continued to complain of abdominal pain with diarrhea and bleeding.  R. 292.  It appears that she was again hospitalized. *Id.*

-6-

Dr. Austin examined Baker at the request of the SSA in May 2003.  Baker indicated that she had been depressed since February, accompanied by crying spells, social isolation and auditory and visual hallucinations, among other things.  R. 299.  Dr. Austin noted after examination that Baker's mood was depressed, her affect blunted, and her judgment and insight marginal.  His assessment was that she suffered from a major depressive disorder, single episode, with severe psychotic features.  Her social functioning was poor, and her functional ability marginal based on her vegetative symptoms of depression.  R. 300.

A psychologist who reviewed Baker's records in June 2003 found that she would be moderately limited in the ability to maintain attention and concentration for extended periods, and to perform activities within a schedule, maintain regular attendance and complete a normal workday or workweek.  R. 302-03. The reviewing psychologist also opined that Baker would be moderately limited in the ability to interact appropriately with the general public, to respond appropriately to changes in the work place, and to set realistic goals and work independently of others.  R. 303.   As such, the psychologist concluded that Baker would have moderate limitations in activities of daily living, social functioning and maintaining concentration, persistence and pace. R. 316.

In June 2004, Baker again sought emergency room treatment for diarrhea and abdominal pain.  R. 329–30.  In October 2004, Baker was again hospitalized for acute exacerbation of Crohn's disease.  The medical records reflect an additional diagnosis of hypertension.  R. 359.

Baker was hospitalized in April 2006, for severe diarrhea, hematochezia, with nausea and vomiting over the previous three days.  R. 395.  She received a blood transfusion.  R. 401.  She

was again hospitalized in June 2006, due to diarrhea, vomiting and rectal bleeding.  R. 375.  She

was given a blood transfusion.  R. 375-76.

IV.    STANDARD OF REVIEW.

To be entitled to disability benefits under OASDI or SSI, a claimant must be unable to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which has lasted or can be expected to last for a continuous period of not less

than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental

impairment" under the terms of the Act is one "that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable clinical and

laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).  In a case seeking

disability benefits under OASDI, the claimant also must show that he or she became disabled

before his or her insured status expired in order to be entitled to disability benefits.  42 U.S.C.

§ 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be

followed in determining whether a claimant is entitled to benefits.  In sum, an ALJ must apply the

following criteria, in sequence:

> (1) Is the claimant presently unemployed?
>
> (2) Is the claimant's impairment severe?
>
> (3) Does the claimant's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
> (4) Is the claimant unable to perform his or her former occupation?

(5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability.  A negative answer leads to a finding of "not disabled."  *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform."  *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210.  "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

-9-

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## V.    ANALYSIS.

Baker alleges that the ALJ erred in the most recent decision by failing to call upon a medical expert to determine when her condition reached disabling proportions as required by Social Security Ruling 83-20. She further submits that the ALJ failed adequately to consider her impairments in combination. Finally, she argues that the ALJ was required to call upon a VE to support his decision at step five of the sequential evaluation in light of her nonexertional

impairments.  I will discuss only the latter assignment of error in detail, because I find it to be dispositive.

Before the Grids were promulgated in 1979, the preferred method of determining whether there was work available that a Social Security claimant could perform was through the testimony of a VE.  *See Cowart v. Schweiker*, 662 F.2d 731, 736 (11th Cir. 1981).  After the United States Supreme Court approved use of the Grids in appropriate cases, *see Heckler v. Campbell*, 465 U.S. 458 (1983), three-judge panels in the Eleventh Circuit began to address whether the Grids could be relied upon at step five of the sequential evaluation process when the claimant had nonexertional impairments that limited her work skills.

The law that developed in this circuit requires that the ALJ initially determine whether the claimant's alleged nonexertional impairments limit the ability to work; if they do not, then exclusive reliance on the Grids at step five of the evaluation process is appropriate.  *See Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 537 (6th Cir. 1981); *see also Broz v. Schweiker*, 677 F.2d 1351, 1363 (11th Cir. 1982) (remanding for consideration whether a claimant's nonexertional impairments significantly limited his basic work skills, and then, whether the Grids could be used), *vacated, Heckler v. Broz*, 461 U.S. 952 (1983), *adhered to on remand, Broz v. Heckler*, 711 F.2d 957 (11th Cir.), *modified in other respects*, 721 F.2d 1297 (11th Cir. 1983).  However, if the ALJ finds that the claimant's nonexertional impairments significantly limit the claimant's basic work skills, otherwise stated as precluding the wide range of work at a given exertional level, then exclusive reliance on the Grids is not permitted.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004) (citing *Francis v.*

*Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985)).  Rather, the ALJ must turn to VE testimony

regarding the specific jobs that the claimant can perform in light of the claimant's functional

capacity.  *See id.* at 1243; *Welch v. Bowen*, 854 F.2d 436, 439-40 (11th Cir. 1988); *Gibson v.*

*Heckler*, 762 F.2d 1516, 1521-22 (11th Cir. 1985).

The ALJ's decision that nonexertional impairments do not significantly limit basic work

skills (that is, do not preclude a wide range of work at a given exertional level) must be supported

by substantial evidence in the record.  For example, in *Allen v. Sullivan*, 880 F.2d 1200, 1202

(11th Cir. 1989), the ALJ found that the claimant had nonexertional impairments arising from

borderline intellectual functioning and a dysthymic disorder that precluded her from performing

complex tasks and working under extraordinary stress.  The ALJ concluded that these

nonexertional limitations only slightly diminished the claimant's capacity to perform light work

and relied upon the Grids to conclude that there was work available that the claimant could

perform.  The Eleventh Circuit reversed the decision, holding that use of the Grids was

inappropriate.  The Court explained as follows: "Absent testimony from a vocational expert, the

ALJ's conclusion that appellant's mental limitations do not significantly compromise her basic

work skills or are not severe enough to preclude her from performing a wide range of light work is

not supported by substantial evidence." *Id.* at 1202.

Similarly, in *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992), the ALJ found that the

claimant had a seizure disorder that resulted in a nonexertional impairment limiting his ability to

work around unprotected heights or hazardous machinery.  The ALJ concluded that these

nonexertional limitations did not reduce the range of light work available to the claimant.  The

court reversed this decision, emphasizing that "it is only when the claimant can clearly do unlimited types of light work, . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." *Id.* at 839 (quoting *Allen,* 880 F.2d at 1202, and *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. Unit A March 1981)).

In the present case, the ALJ found that Baker's mental impairment limited her to unskilled work and that she should have minimal interaction with others.[2]  The ALJ correctly concluded that the Grids account for the limitation to unskilled work. *See Vuxta v. Comm'r of Soc. Sec.*, 194 Fed. Appx. 874, 876 (11th Cir. 2006).  However, the ALJ did not cite to any legal or occupational authority that the limitation regarding interaction with others would not significantly erode the base of work available at the given exertional level.  Because he failed to do so, substantial evidence does not support his conclusion that there was work Baker could perform between April 8, 2003, the alleged onset date of her disability, and July 1, 2006.

The Appeals Council twice recognized the need for the ALJ to call upon a VE to determine whether there was work that Baker could perform in light of her nonexertional impairments.  The social security regulations require that "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b), 416.1477(b); *cf. Gibbs v. Barnhart*, 130 Fed. Appx. 426, 430 (11th Cir. 2005)(noting that "in order to fully

---

[2]  I note that the ALJ did not evaluate Baker's mental impairment in the four functional areas using the special technique required for evaluation of mental impairments.  This failure alone requires that the case be remanded.  *See Moore*, 405 F.3d as 1214.

-13-

discharge the Appeals Council's mandate," the ALJ was required to take the steps required by the Appeals Council). The ALJ's failure to call upon a VE at step five of the sequential evaluation as required by Appeals Council's remand order is reversible error. *See, e.g., Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1375-76 (N.D. Ga. 2006); *see also Allen v. Astrue*, Civil No. 06-cv-018, 2007 WL 1276933, at * 3-4 (E.D. Pa. May 1, 2007); *Hutchison v. Apfel*, No. 2:98-cv-087, 2001 WL 336986, at * 11 (N.D. Tex. March 9, 2001); *Mann v. Chater*, No. 95 CIV 2997 (SS), 1997 WL 363592, at * 3 (S.D.N.Y. June 30, 1997).

For all of these reasons, the Commissioner's decision must be reversed and the case remanded for further proceedings.

On remand, the ALJ should discuss all of the nonexertional limitations arising from Baker's severe impairments.  The record is replete with evidence that within the alleged disability period, Baker had repeated episodes of diarrhea, rectal bleeding, vomiting, nausea and abdominal pain.   Because these are all nonexertional impairments that may limit an individual's ability to work, the ALJ should specifically address whether and to what extent these symptoms limited Baker's functional capacity. *See, e.g., Rambo v. Heckler*, 728 F.2d 1583 (11th Cir. 1984)(finding chronic diarrhea to be a nonexertional impairment).

Finally, because the ALJ found that Baker's condition was disabling as of July 1, 2006, it would be appropriate for him to obtain the opinion of a medical expert regarding the onset date of Baker's disability.  Social Security Ruling 83-20 advises that in the case of progressively worsening impairments, the opinion of a medical expert may be of assistance.  Soc. Sec. Rul. 83-

20, 1983 WL 31249, at *2-3 (Nov. 30, 1982)(addressing need for medical expert to determine

onset date of disability in the case of slowly progressive impairments).

## VI.    RECOMMENDATION.

For the reasons stated herein, it is **RECOMMENDED** that the decision of the

Commissioner be **REVERSED** and the case be **REMANDED** for further proceedings.  I further

recommend that the Court direct the Clerk of Court to issue a judgment consistent with its order on

this Report and Recommendation and, therefore, close the file.

Failure to file written objections to the proposed findings and recommendations contained

in this report within ten (10) days from the date of its filing shall bar an aggrieved party from

attacking the factual findings on appeal.

**RESPECTFULLY RECOMMENDED** In Orlando, Florida on July 24, 2008.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

-15-